We'll hear the first case. Thank you. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case this morning is United States v. Lasseque. Case numbers 14-2026 and 14-2079. Good morning, Mr. Murphy. Good morning, Ron. With the court's permission, I have three points in the brief and I would like to start with the question of the two-point adjustment for obstruction of justice. I will not recite the facts in detail, but it all arises from the use of this document which is called an affidavit. I'll call it the affidavit for purposes of clarity at the bail hearing that the appellant wanted to have. Now, the use of that document, which is a pretty good summary of the testimony he gave at trial, exonerating his participant himself and saying he had nothing to do with his robbery, is the basis of the two-point adjustment. Well, isn't your problem the fact that the co-defendant, when he pled, basically disagreed in his statement that this fellow, your client, had nothing to do with the crime? I agree that's what the government argues. I think that a close examination of the plea colloquy when Rue took his plea will show that that did not quite happen. First, in that plea colloquy, there is no reference whatsoever to this affidavit. Secondly, Rue's affirmation of how the robbery occurred was simply saying, essentially, yes, after the United States Attorney. Well, that's a typical what happens. Certainly it is. We both know at sentencing, and do you agree with the government's statement of the case? That's the standard procedure. The standard procedure is also that it focuses upon the plea, upon the defendant who's actually being guilty, upon his participation as a collateral issue. Now, I'm not saying that Rue's participation is irrelevant. Strike that. The sex participation is irrelevant to Rue's pleading guilty to a conspiracy. He had to have somebody to conspire with. But the focus there is upon Rue's acceptance of responsibility and saying, yeah, they did it. I robbed the bank, and I was involved in a conspiracy. Nobody's thinking at that point. You need two people for the conspiracy. Exactly, exactly. And I think what really is the problem with the enhancement is the sentencing judge's comments at the time he adopted the enhancement and endorsed it. He said, I really don't know if you're trying to convince yourself of this. In my words, have you lost grasp of reality? Do you really think you didn't have anything to do with it? That's far different from concluding that Lasek handed that piece of paper to me to hand up to Judge Allman, Magistrate Allman at the bail hearing with an intent to obstruct or after the initial part of the hearing. He went back and his lawyer, I don't know if you were I'm the lawyer. You came back up with the piece of paper at that point. He's tugging at my elbow to hand it up. I'm not going to get into our communication. Suffice it to say, that's when it occurred. And it's after essentially, I think, the magistrate had already made his decision about bail. He reopened it for an argument based upon that document. But regardless of what standard you use, probability, certainty, beyond a reasonable doubt, the judge has to conclude that this was an attempt to obstruct justice. And that's exactly what the judge did not do. He expresses his own uncertainty of what this is all about. And in my brief, I argued that this should really be compared to an adjustment if they were to seek an adjustment based upon perjury testimony at the trial. Because this affidavit, as I said, is like an FBI 302 of his testimony at trial. It really should be held to that standard. The court should have to conclude that he made a knowing, deliberate, intentional attempt to obstruct or impede justice. There's nothing like that here. I hope I've answered the court's question. With respect to the brandishing situation, the government's argument, essentially, is that the use of a weapon, and therefore by implication the brandishing, is something reasonably foreseeable in a robbery. Well, a bank robbery in broad daylight downtown in a crowded city. Sure, sure. But if you take that position, why have an enhancement for brandishing? Every robbery, if you take that position, is a robbery in which it's reasonably foreseeable somebody will use a weapon. But only some of them will someone use a weapon. So if the weapon isn't used, you don't get the enhancement. But if the weapon is used and the circumstances otherwise don't belie the reasonableness of this inference, then you get it. Exactly. But it's the brandishing. But you can infer that on everything. You can infer that on the robbery of Cumberland Farms where somebody goes in, tells the clerk I'm going to punch you in the face and grabs the money out of the cash drawer. And it's, I want to be as precise as I can be. It has to be something that the person you're charging, you want to have this brandishing enhancement applied to, would reasonably infer or look forward to. There's no evidence in this case whatsoever of a weapon of any kind until LeSect, after he'd stopped the car for the police officer, looked in the back and saw that Rue had this weapon that, for all intents and purposes, looks like, I think a 9mm pistol. It's a BB gun. That's the first time a weapon comes up. And you can't, I respectfully submit, charge him with brandishing the weapon. Well, isn't it a reasonable inference, given the fact that the co-defendant had this elaborate disguise, which one has to surmise he did not stop, take it out of a bag on the street and dress up in this disguise that he did in the car. And that your client had a reasonable idea from that as to what was going to happen. I'll go one step further. That he had to take the disguise off once he got back to the car, or before he got back to the car. See, there's no evidence in this case whatsoever of a weapon of any kind until LeSect, after he'd stopped the car for the police officer, looked in the back and saw that Rue had this weapon that, for all intents and purposes, looks like, I respectfully submit, charge him with brandishing the weapon that he did not stop, take it out of a bag on the street. So I think the evidence is non-existent that he knew a weapon would be used. And if I may, I'd segue from that point, because they tie together into the sufficiency argument. I'll be as brief as possible on this. Had there been a conspiracy charge to the jury, this case would be much different. A picketing charge to the jury, the case would be much different. For reasons I might learn today, the government did not put a picketing charge in. And that means that each of the two counts has to be examined independently in terms of the jury instructions. Now the jury instructions are very clear. I realize you take the jury instructions as a whole, but you can't ignore a salient point because of the totality of the rest. Trial judge instructed the jury that they had to find Lasek, knew about the robbery as it occurred or after. The only possible basis for inferring that he knew about the robbery at any time is the flight. There are many explanations for the flight. He gave one at trial. Another one might be, although there's no evidence of this, that had that been a real weapon and he had been stopped with it, he could have been charged as a felon in possession. He's a convicted felon. But the logic of the government advances is circular. You knew he had a weapon because you were in the robbery. It was a robbery. You fled because you knew there had been a robbery. You knew there had been a robbery because you fled. My time is up. I submit unless the court has questions. Thank you. Good morning. Donald Lockhart for the government. Unless the court has a different preference, I'll stay with the order of the issues that Mr. Murphy followed. The first issue he addressed was the obstruction of justice enhancement based on the Roo affidavit that was submitted at the bail hearing. And I think it's important to realize here that you have a particular sequence of events. The magistrate judge initially denies bail. And at that juncture, you can actually see in the record the defendant prompting his attorney to submit the Roo affidavit. The defense attorney, Mr. Murphy, says my client has just passed me this statement. It's a statement that comes out of Mr. Lasek's own personal legal file for the case. And the judge asks Mr. Lasek whether it's appropriate to accept the original. The defendant says yes, no problem. You can have the original because I have other copies. So it's clear that this affidavit is originating with the defendant. It's coming out of his own personal file. It's being passed up to his attorney precisely so that the attorney can use it to persuade the judge to reverse course and to grant bail, which the judge had just denied. And then there's no doubt that the affidavit is submitted on a material bail point. The bail statute says that one factor in assessing bail is the strength of the government's case. So this is clearly a defendant who is trying to influence the judge's decision in that respect. And it really doesn't matter whether Roo was cross-examined at the plea colloquy or not. Because when he admits guilt and when he implicates the defendant in the conspiracy, he's speaking under oath. And so the district court judge, certainly at sentencing, is entitled to place weight on a statement made under oath, even if not subject to cross-examination. And beyond that, the fact is, if you want proof that what Roo was saying at the guilty plea colloquy was true and correct, you only need look at the trial evidence, which abundantly supports the notion that Roo's initial affidavit was false and that his later guilty plea colloquy statements were true. Unless there are questions about the obstruction enhancement, I'll move quickly to the gun enhancement. On the gun enhancement, don't forget this is a defendant who drove his co-defendant all the way from East Providence to Barrington to commit an armed robbery. The defendant, the co-defendant rather, presumably, is already in at least some of his robbery attire during that car ride. He has with him a fairly substantial-looking gun. The photos of the gun are in the back of the brief. It's a large, black gun. Of course, it turns out to be a BB gun. But if you look at the pictures in the back of the brief, one of which is up against an old-fashioned wooden ruler, a 12-inch ruler, you'll see that this gun was almost a foot long from stem to stern. So it's a large, black gun and something that the defendant likely saw on that car ride. Beyond that, you have the fact that this is a robbery that was at least one day in the making. The getaway car is rented the day before. These two guys live one floor apart in the same building. There's clearly some planning going on before the robbery. It seems likely that the two discussed Mr. Rue's intended use of the weapon. And then beyond that, you have the fact that weapons, and in particular guns, are a common tool of the trade in the bank robbery business. So even if you put aside the evidence of actual knowledge, there is at the very least evidence to support the district court's foreseeability finding. And in particular, there's a guideline comment, which we say is suggestive. It's cited at page 24 of the brief. And that comment says, in essence, that it gives an example of a getaway driver who would likely have foreseen the fact that an assault occurred as part of a bank robbery. And the guideline comment says, because of the nature of the offense… How do you explain the jury verdict on the armed robbery charge? Well, the jury verdict, of course, isn't dispositive for two reasons. Number one, because they have a different… Approved. And a different substantive standard as well. Remember, the jury has to find that the defendant knew that his co-defendant would commit an assault involving the weapon. The sentencing judge, under the preponderance standard, has to find only that it was reasonably foreseeable to the defendant that his co-defendant would possess or brandish a gun. Mere possession of a gun in connection of the offense is enough for the enhancement. So we have a different burden of proof and a different substantive standard. And, of course, even if the burden of proof and substantive standards coincided completely, we have a principle which says that acquitted conduct can serve as a basis for an enhancement. So with that, unless there are questions on that enhancement, I'll turn very briefly to the sufficiency of the evidence issue. It's not just the flight, although we shouldn't demean the flight factor. This is no ordinary case of flight. You have a defendant who is caught within one mile of the bank a few minutes after the bank robbery. The bank robber is in the back of the car. His costume's in the back of the car. The gun's in the car. The stolen loot's in the car. And there's this initial episode where the police pull him over. He waits, pauses, waits for the officer, gets out of the car, then takes off. And then we have this high-speed chase, speeds over 90 miles an hour. The defendant's blowing through stop signs and red lights. He's going up on grassy embankments. He's fishtailing. He's snaking through the streets of East Providence. He crashes into a police cruiser. He gets out of the car. He begins to flee on foot. He tries to scale a fence. He's pulled down from the fence. He struggles to avoid arrest. So these are the actions of somebody who is likely fully aware that he is helping somebody get away with a bank robbery. Beyond that, however, you have the fact of his statements and behavior the next morning. You also have the fact that in all likelihood his co-defendant was wearing this getup as they proceeded from Providence to Barrington and some other factors as well. So unless there are further questions about sufficiency of the evidence, we'll rest on our brief. Thank you.